IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LUIS ELIZALDE<br>*Plaintiff* | § § § | |
| VS. | § § § | CIVIL ACTION NO. 2:23-cv-180 |
| BEE COUNTY, TEXAS,<br>AND ERIC SIERRA<br>*Defendants* | § § § § § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **LUIS ELIZALDE**, referred to herein as Plaintiff, complaining of Defendants **BEE COUNTY, TEXAS** ("County"), **ERIC SIERRA** ("Jailer Sierra"), and **MICHEAL PEREZ** ("Officer Perez"), in his individual capacity, hereinafter called Defendants, and for cause of action, would respectfully show unto the Court and jury the following:

### I. NATURE OF THE CASE

**THE CLAIM:** Bee County Sheriff's Office Jail Corporal ERIC SIERRA used excessive force against Luis Elizalde in violation of his individual rights under the Fourth Amendment to the United States Constitution he brutally and violently body slammed Mr. Elizalde onto his face on the concrete in the sallyport of the Bee County Jail. Defendant was assisting Texas Department of Public Safety Trooper Gabriel Green in transporting Mr. Elizalde into the Bee County Jail pursuant to a Bee County Jail policy, practice, or custom wherein jailers were permitted to assist arresting officers with transport by meeting the officer and subject in the sallyport of the jail rather than requiring the officer to transport the subject in on their own. During his transport, Jailer Sierra allegedly believed he'd been struck by Mr. Elizalde, at which time he body slammed him with

1

extraordinary force directly onto his face and onto the pavement, causing Ms. Roberts to be severely injured. Mr. Elizalde's injuries resulted directed and only from this clearly excessive use of force; and the excessiveness of that force was clearly unreasonable. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

## II.     PARTIES

1. Plaintiff, **LUIS ELIZALDE** is a resident of BEE COUNTY, TEXAS.
2. Defendant Bee County, Texas is a political subdivision of the State of Texas and the **Bee County Sheriff's Office** is an agency operated thereunder.
3. The Bee County Sheriff's Office is funded and operated by the Bee County Commissioners Court. George (Trace) Morrill, III is the County Judge and chief elected officer of Bee County, Texas. County Commissioners Kristofer Linney, Dennis DeWitt, Sammy G. Farias, and Tino Olivares comprise the Commissioners Court of Bee County, the County's legislative and governing body.
4. County Judge Morrill and the Commissioners Court are responsible for implementing the policies and decisions of the Commissioners Court of Bee County as the County's primary administrators.
5. County Judge Morrill and the Commissioners Court are tasked with appropriating, reviewing, and implementing the Bee County Sheriff's Office's budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.
6. Alden E. Southmayd, III is the Sheriff of Bee County and the primary policymaker tasked with creating, implementing, and reviewing the Sheriff's Office's policies, procedures, practices, and customs.
7. Bee County, Texas may be served by and through County Judge Morrill, 105 W. Corpus Christi St., Rm. 305, Beeville, Texas 78102.
8. Defendant **ERIC SIERRA** is (or was) a jailer employed by the Bee County Sheriff's Office and at all times material herein was a police officer acting in the course and scope of his employment for the Bee County Sheriff's Office. He may be served at 1404 N. Hackberry St., Beeville, TX 78102, or wherever he may be found. Defendant Sierra is being sued in his individual capacity.

### III.     JURISDICTION

9. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.
10. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.
11. Venue is also appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in the City of Beeville, Bee County, TX, which is in the Corpus Christi Division of the Southern District of Texas.

### IV.     FACTS AND ALLEGATIONS

12. On 16 July 2021 LUIS ELIZALDE had his constitutional rights violated when he was brutally, excessively, and recklessly body slammed onto his face on the concrete floor of the Bee County Jail sallyport.
13. The incident was captured on one of the jail's camera devices.
14. At approximately 2230 that evening, Mr. Elizalde had been arrested by DPS Trooper Gabriel Green on suspicion of DWI.
15. During the course of his transport to the Bee County Jail, Mr. Elizalde was very talkative to Trooper Green, taunting him at points. At one point, Mr. Elizalde indicated that he'd been injured in Trooper Green's custody, with Trooper Green observing a small amount of blood on the seatbelt where Mr. Elizalde was restrained.
16. After attempting to Mirandize Mr. Elizalde and read him the statutory warning for DWI, Trooper Green, having grown frustrated, requested deputies to the sally port to assist him using his portable radio.
17. Bee County Jailers Corporal Eric Sierra and Richard Vidal arrived in the sallyport to assist Trooper Green with a "95," code for a new inmate.
18. When Jailers Sierra and Vidal arrive, Trooper Green is standing with the door to his DPS unit open and Mr. Elizalde a few feet away. A mounted camera in the sallyport memorializes the scene, showing how the men are situated. Mr. Elizalde is standing still, not menacing or combative, with his hands double-cuffed behind his back: a fact Jailer Vidal was confused by considering Mr. Elizalde's size:

3



(ILLUSTRATION A)

19. As depicted in Illustration A, Mr. Elizalde is standing to Defendant Sierra's right and across from Jailer Vidal and Trooper Green.
20. Approximately four seconds later, Mr. Elizalde moves over to directly in front of Defendant Sierra and to the immediate left of Jailer Vidal. As he does this, on information and belief, he is instructed to provide his hands or otherwise lift them, which he does. The video clearly shows that Mr. Elizalde neither strikes nor attempts to strike Defendant Sierra in his face with his hands. His hands reached about as high Defendant Sierra's sternum.

4



(ILLUSTRATION B)

21. At that point, on information and belief, Jailer Sierra grew angry and began to chastise Mr. Elizalde, admonishing him that he should not strike a jailer.



(ILLUSTRATION C)

22. Having grown angry at the perceived slight, Defendant Sierra takes an aggressive, squatting stance and pulls on Mr. Elizalde's right arm, obviously intending and preparing to take

6

him down as Jailer Vidal watches. Trooper Green had previously been turned around and was not looking at Defendant Sierra as he readied to launch.



(ILLUSTRATION D)

23. Defendant Sierra then thrusts Mr. Elizalde down and over his shoulder with extreme force, causing Mr. Elizalde to slam forcefully and fast-first into the concrete. It appears, on information and belief, that Jailer Vidal was attempting to stop the body slam as indicated by his outstretched hands, seeming to reach for Mr. Elizalde.



(ILLUSTRATION E)

24. Mr. Elizalde is then violently slammed to the ground, with Jailer Vidal observing, on information and belief, Mr. Elizalde's head hitting the cold, hard ground twice.
25. Mr. Elizalde is then helped up and taken into the facility and charged with DWI.
26. Inside the facility, Corporal Vela of the Bee County Jail began investigating the incident, reviewing the cameras and finding that "[Mr. Elizalda] brought his arms up behind him ***chest level*** to Cpl Sierra ***not close to his face***," as noted in their report.
27. The following day, 17 July 2021, Defendant Sierra was put on Administrative Leave by Chief Deputy Ronnie Jones:

8



(ILLUSTRATION F)

28. Thereafter, Bee County Sheriff's Office investigators Oscar Rodriguez and Adam Levine interview Mr. Elizalde and subsequently submitted the case to the 156th Judicial Attorney's Office for prosecution on 22 May 2023. At this point, Plaintiff is unaware of the disposition of Defendant's criminal case.

# V.
# CAUSES OF ACTION

**COUNT ONE**
**EXCESSIVE FORCE**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendant Sierra**

29. Mr. Elizalde repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

30. Defendant Sierra, acting under color of law, deprived Mr. Elizalde of the rights and privileges secured him by the Fourth Amendment to the United States Constitution to be free from illegal and unreasonable seizures by the use of force.

31. Accordingly, Mr. Elizalde commences this action pursuant to 42 U.S.C. § 1983.

32. "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive to the need of force; and (3) that the use of force was unreasonable under the circumstances." *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)(see also *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

33. Mr. Elizalde was unquestionably injured by his brutal and violent takedown onto the concrete floor of the Bee County Jail sallyport. As the Fifth Circuit has opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tortfeasor [ — here, Defendant s Gutierrez and Perez —] takes his victim as he finds him." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).









(ILLUSTRATIONS G-P)

34. With respect to the injury, significant injury is not required, per se; however, the injury must be "more than de minimis." *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017), (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), but "the injury must be more than *de minimis*," (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).

35. Mr. Elizalde' injuries resulted directly and only from a use of force that was excessive to the need of force, to wit: being forcefully slammed down to the ground when he had not struck Defendant Sierra, was not posing any threat to Defendant Sierra; was *visibly and obviously* unarmed; and when he was thrown violently, face first, into the concrete floor of the Bee County Jail sallyport without regard for his safety or potential injury.

36. "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (see also, *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017)).

37. An officer tasing, striking, or otherwise violently slamming an arrestee who is not actively resisting arrest is a constitutional violation. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, at 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018).

13

38. Fifth Circuit case law establishes that the degree of force an officer can employ is reduced when an arrestee is not actively resisting arrest. *Id.*
39. Mr. Elizalde was not actively, passively, or otherwise resisting arrest when forcefully body slammed by Defendant Sierra.
40. In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

    a. *Severity of the crime;*

    b. *Immediate threat;* and

    c. Whether the subject is *actively resisting* or *attempting to evade arrest by fleeing*. *Graham v. Connor,* 490 U.S. 386, 396 (1989).
41. Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case." Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).
42. "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight." *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).
43. Under *Graham,* courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way. *Ibid* (citing *Graham v. Connor*, at 396).
44. As to the three elements of the *Graham* objective reasonableness test, **none** of the three factors is satisfied in favor of Defendant Sierra.
45. At the point Defendant Sierra took down Mr. Elizalde, he was not attacking or assaulting him, and had obviously **not** struck him, as is crystal clear on the camera footage from the sallyport. Even if he were theoretically resisting him, he was **double cuffed** and obviously only able to raise his arms to a certain height. He clearly posed no threat to the jailers.
46. Consequently, no force **whatsoever** was justified by Defendant Sierra.
47. The other two factors, however, also weigh heavily against Defendant Sierra
48. Mr. Elizalde was not an immediate threat, as any alleged threat he posed had already abated when he was slammed to the ground. He took no steps towards Defendant and was

clearly unarmed. In the movement where Defendant Sierra claimed he was struck in the face, the camera shows perfectly that Mr. Elizalde's hands never came near Defendant Sierra's face.

49. Mr. Elizalde was also not actively or passively resisting Defendant Sierra or attempting to flee or evade arrest. He was standing by himself, in front of Defendant Sierra when taken down and completely subdued before being body slammed to the concrete. He was most certainly not attempting to flee either.

50. The fact that *no* alleged crime had been committed or even suspected and that Mr. Elizalde was standing still or was otherwise subdued, makes it clear that Defendant's belief that force was needed and the accompanying use of force were completely unreasonable and the force completely excessive. As the Fifth Circuit opined in *Hanks*, "a reasonable officer on the scene would have known that suddenly resorting to physical force as [Defendant Sierra] did would be clearly excessive and clearly unreasonable." *Hanks*, at 745.

51. The *Hanks* court opined further, noting "…clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance…" *Id.*, at 747.

52. Mr. Elizalde suffered physical injury, pain, mental anguish, as a direct result of the excessive force used against him. Illustrations G-P depict the severity of the injuries, save for the neurological injury he sustained due to this brutal body slamming.

53. Defendant Sierra caused Mr. Elizalde to endure pain and suffering by forcing him to the ground, violently throwing him face first into the concrete.

54. These injuries were only caused by this forceful take down and not by any other means.

**COUNT TWO**

**Fourth Amendment § 1983 *Monell* Claim against BEE COUNTY, TEXAS**

55. Plaintiff incorporates by reference all of the foregoing and further alleges the following:
56. The conduct of Defendant Sierra constituted unlawful, unreasonable excessive force against Mr. Elizalde without legal cause or justification.

57. At all material times, Defendant Sierra acted under color of state law, as an agent of BEE COUNTY, TEXAS.
58. Defendant Sierra was acting within the course and scope of his duties as a Bee County jailer when he slammed Mr. Elizalde down to the concrete. At all times relevant to this lawsuit, Defendant Sierra was clad in Bee County Sheriff's Office-issued uniforms.
59. Sheriff Southmayd was and is the Defendant County's policymaker for all matters related to the Bee County Jail, having been delegated the policymaking authority by the Commissioners Court of Bee County and the affirmative duty to safely house inmates, as imposed by the Texas Administrative Code and the Texas Commission on Jail Standards.
60. Consequently, the Bee County Jail had or ratified the following policy, custom, and/or practice in place when Defendant Sierra injured Mr. Elizalde:
61. **Policy No. 1:** The Bee County Sheriff's Office policy, practice, or custom wherein jailers were permitted to assist arresting officers with transport into the jail by meeting the officer and subject in the sallyport of the jail rather than requiring the officer to transport the subject into booking on their own.
62. Sheriff Southmayd and his command staff were all deliberately indifferent to the natural byproducts of these policy, practice, and/or custom, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring civilians were not hurt by it.
63. It was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of these policies.
64. Sheriff Southmayd and his command staff knew or should have known that not requiring arresting officers to transport subjects to booking themselves — except in the instances where they are truly risking injury — might expose citizens to dangerous situations in the sallyport of the jail. Moreover, it was clear that such policies would end up with the deprivation of citizens' and suspects' rights under the Constitution and laws of this State and country.
65. This policy, *supra*, was actually known, constructively known, and/or ratified by the Bee County Sheriff's Office and its policymakers, including Sheriff Southmayd, and was promulgated with deliberate indifference to Mr. Elizalde' rights under the United States Constitution and the rights of all others making contact with Bee County Sheriff's Office deputies

and jailers. The policymakers of the Bee County Sheriff's Office knew that their jailers and deputies would continuously be put in situations wherein constitutional violations like those aforementioned in this complaint would occur. These policies made it highly likely that such constitutional violations as the one previously described would occur, under color of state law. The previously mentioned policy was the moving force of Mr. Elizalde' constitutional deprivation and injuries, causing him to experience physical and mental injury and suffer damages.

## **Qualified Immunity under § 1983**

66. County Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

   a. The individual's acts deprived the party of constitutional rights under color of law;

   b. The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

   c. Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

67. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524. This case is an obvious case of excessive force and violation of the Fourth Amendment right against unreasonable searches and seizures, because Mr. Elizalde was not actively engaged in the commission of a crime at the time of his violent takedown, and was completely subdued body slammed into the concrete, face first.

68. Defendant Sierra, acting under color of state law, enforcing the policies, customs, and/or practices of the Bee County Sheriff's Office, deprived Mr. Elizalde of his civil liberties, without due process of law, by taking him down unreasonably and with clearly excessive force.

69. The Fifth Circuit has, in denying qualified immunity for officers, "placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force."

*Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016). The Court opined further to that end in the *Hanks* case, noting that "our case law clearly established that [the officer] should have continued to verbally negotiate — including by threatening force, if necessary — rather than abruptly resorting to 'actual' physical force." *Hanks*, at 748.

70. No reasonable official could have believed that taking Mr. Elizalde down and throwing him face first into the concrete floor of the Bee County Jail sallyport were necessary. "Any reasonable officer should have realized that [such actions] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

71. The acts of Defendant were unreasonable under the circumstances when viewed objectively.

72. Defendant was deliberately indifferent to the excessive risk of harm to Mr. Elizalde in the action he took. Such acts deprived Mr. Elizalde of and violated his clearly established constitutional rights and were not objectively reasonable.

73. The acts of Defendant clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mr. Elizalde's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that their actions were violative of such rights.

74. The acts of Defendant were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as violently taking down a non-menacing subject and throwing them face first into a concrete floor. Thus, Defendants are liable to Plaintiff for the damages caused by their actions, which were the direct and proximate causes, in each count alleged above respectively, of Mr. Elizalde's injuries.

## VIII.
## DAMAGES

75. Mr. Elizalde repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

76. Plaintiff seeks monetary relief and for judgment of all the other relief to which he deems himself entitled.

77. Mr. Elizalde' injuries were foreseeable and directly and proximately caused by the excessive force used against him.

78. As a direct and proximate result of the occurrence underlying this lawsuit, Mr. Elizalde suffered:

   a. Physical injuries, including impairment;
   b. Physical pain and suffering;
   c. Deprivations of her liberty;
   d. Permanent physical disfigurement;
      e. Emotional distress, torment, and mental anguish; and
   f. Reasonable and necessary medical care to treat her injury in the past and future.
79. Plaintiff seeks to recover reasonable attorney's fees and costs of court, and hereby requests the award of punitive damages, pursuant to 42 U.S.C. § 1983 and § 1988.

## IX.
## ATTORNEY'S FEES

80. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.
## JURY DEMAND

81. Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:   (361) 887-1031
Facsimile:   (361) 887-0903

        __*/s/ Matthew S. Manning* _____
        MATTHEW S. MANNING
        State Bar No.: 24075847
        Southern Dist. ID No. 3504172
        General Correspondence Email:
        matt@wcctxlaw.com
        **\* E-Service Email: service@wcctxlaw.com**
        **\* E-Service is only accepted at the above designated e-service e-mail address.**

        ATTORNEY FOR LUIS ELIZALDE